Brian A. Ertz, ISB No. 9960
Eileen R. Johnson, ISB No. 9935
ERTX JOHNSON LLP
brian@ertzjohnson.com
eileen@ertzjohnson.com
2399 S. Orchard Street, Ste. 204
P.O. Box 665
Boise, Idaho 83701
(208) 918-1663 (Telephone)
(208) 416-6665 (Fax)

*Attorneys for Plaintiffs Cory Allred & April Cordon Allred*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CORY ALLRED**, an individual, and **APRIL CORDON ALLRED**, an individual, <br><br> Plaintiffs <br><br> v. <br><br> **EDGECREEK, LLC**, a Utah limited liability corporation; **ALL STUDIO APARTMENTS, LLC**, an Idaho limited liability corporation; **CHRISTOPHER CARR**, an individual; and **John** and **Jane Does I Through XX**, whose true identities are unknown, <br><br> Defendants. | Case No. 1:19-cv-61 <br><br> **COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

COME NOW the Plaintiffs, Cory Allred and April Cordon Allred, by and through their counsel of record, and hereby complain and allege as follows:

### I.   INTRODUCTION

This action seeks monetary, declaratory, and injunctive relief, alleging that Defendants violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, specifically 42 U.S.C. §§ 3604(f)(1) and § 3604(f)(2).

## II.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332 in that this action arises under the laws of the United States, namely 42 U.S.C. §§ 3604, 3617, and 3613, and diversity jurisdiction exists in this matter.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the claims alleged herein arose in and concern real property located in the city of Rexburg, County of Madison, State of Idaho.

3. Based on the allegations set forth herein, the Court has personal jurisdiction over all Defendants named in this action.

## III.   PARTIES

4. Plaintiffs Cory Allred and April Cordon Allred were at all times relevant herein residents of Rexburg, Madison County, Idaho.

5. Plaintiffs are now, and at all times relevant herein were, a married couple.

6. Defendant All Studio Apartments, LLC (hereinafter "Defendant All Studio Apartments") is an Idaho corporation located in, and doing business with residents of, Rexburg, Idaho.

7. Defendant All Studio Apartments' sole member is Maplegrove Investments, LLC, a Utah limited liability corporation.

8. Central Park Apartments (hereinafter "Central Park"), is an apartment complex and is owned by Defendant All Studio Apartments.

9. Central Park is located at 450 W. 4th South, Rexburg, Idaho 83440.

10. Defendant Edgecreek, LLC (hereinafter "Defendant Edgecreek") is a Utah corporation located in, and doing business with residents of, Rexburg, Idaho.

11. Defendant Edgecreek's sole member is Maplegrove Investments, LLC, a Utah limited liability corporation.

12. Defendant Edgecreek's principal place of business is 5132 N. 300 W., Ste. 100, Provo, Utah 84604.

13. Defendant Edgecreek is in the commercial real estate business, including property management of residential apartment complexes.

14. Defendant Edgecreek provided property management services for Defendant All Studio Apartments, specifically at Central Park, at all times relevant herein.

15. Defendant Christopher Carr (hereinafter "Defendant Carr") is a resident of Provo, Utah.

16. Defendant Carr operates Defendant Edgecreek.

17. Defendant Carr is an employee of Defendant Edgecreek.

18. At all times relevant herein, Defendant Carr was acting within the scope of his employment with Defendant Edgecreek.

19. Defendant Carr's acts and omissions were in furtherance of his employer's interests.

20. At all times relevant herein, Defendant Carr was the agent of Defendant Edgecreek.

21. As the agent of Defendants Edgecreek, Defendant Carr is subject to jurisdiction of this Court.

22. At all times relevant herein, Defendant Edgecreek was the agent of Defendant All Studio Apartments.

23. Defendant Edgecreek is liable for Defendant Carr's negligent acts and omissions pursuant to the doctrine of *respondeat superior*.

24. Defendants Edgecreek and All Studio Apartments are liable for Defendant Carr's negligent acts and omissions pursuant to the doctrine of *respondeat superior*.

25. Defendant All Studio Apartments is liable for Defendant Edgecreek's negligent acts and omissions pursuant to the doctrine of *respondeat superior*.

## IV.   GENERAL ALLEGATIONS

26. Plaintiffs reallege and herein incorporate by reference all allegations set forth in Paragraphs 1-25 above.

27. Plaintiffs Cory and April moved to Rexburg, Idaho to attend college at BYU-I.

28. April suffered from anxiety and depression.

29. April is handicapped, as that term is defined at 42 U.S.C. § 3602(h).

30. Cory is a person associated with April pursuant to 42 U.S.C. § 3603(f)(1)(C) and (f)(2)(C).

31. Cory and April lived at University Village in Rexburg from January 2016 to April 2017.

32. On ▓▓▓▓▓▓, Cory and April's first child, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, was born in Rexburg, Idaho. ▓▓▓▓'s birth was premature, and ▓ died the same day.

33. ▓▓▓▓'s death worsened April's anxiety and depression.

34. On January 16, 2017, Dr. Austin Gillette of Fall River Family Medicine in Rexburg recommended that April obtain an emotional support animal to ameliorate her severe anxiety and depression.

### *April's Emotional Support Animal, Marzipan*

35. As a result of April's handicap, she requires the assistance of a support animal—a beagle named Marzipan.

36. Marzipan lived with Cory and April at University Village in Rexburg from January of 2017 to April of 2017.

37. Upon information and belief, Cory and April's neighbors at University Village made no complaints about Marzipan.

### *Central Park Imposes Unreasonable Conditions on Cory and April*

38. Cory and April signed a lease agreement (hereinafter "Lease") at Central Park Apartments on March 27, 2017.

39. The Lease contained the following clause:

In the event Resident brings a claim against Owner or its agents with a state or federal agency, Owner shall be entitled to recover as against Resident any attorney fees or costs and damages for its time (including an hourly rate for Owner or its agent's time) if the agency fails to make a finding against Owner.

40. Cory and April requested a reasonable accommodation from Central Park under the Fair Housing Act to allow Marzipan to live with them, because Central Park is a no-pet property.

41. In response to the request, an agent of Central Park provided Cory and April with the following:

   a. A pamphlet from the Delta Society entitled "Minimum Standards for Service Dogs." The pamphlet described what dogs must be able to do in order to qualify as trained for ADA purposes. The document did not discuss training for support dogs.

   b. A document entitled "Assistance Animal Requests." The document made the following demands of tenants:

      i. The proof of need must be on a medical professional's letterhead.

      ii. The proof of need must include the clinical specialty of the medical professional.

      iii.    The medical professional writing the proof of need must "include the level of severity [of disability] and specific rationale for the requested animal."

      iv.    The medical professional and the resident must both state where and how the animals will be cared for if separated from the individual for longer than 30 minutes.

      v.    The resident must disclose whether the animal used to be their pet.

  c.  A document entitled "Rules for Tenant's Assistance Animals." The document makes the following demands of tenants:

      i.    "Animals may not be unattended for longer than 30 minutes while on property."

      ii.    "Animals must be physically held or on a leash while on property, indoor and outdoor."

      iii.    There is a prohibition on "[b]arking, scratching, whining, or other annoying noises… bad smells or pests… other nuisances."

      iv.    "Management will make an effort to find out if any tenants in unit are allergic to the requested animal. If allergies are found, whether before or after the animal arrives, the animal will lose its approval and must be immediately removed from the property."

42.    Cory submitted the required documentation to Defendant Carr on or about April 10, 2017.

43.    Cory, April, and Marzipan moved into Central Park on or about April 10, 2017.

44. On or about April 14, 2017, Defendant Carr sent Cory an email asking for additional information, because "there is no mention of what animal is being prescribed. Is a Cat, Dog, Fish, or Bird acceptable for treatment?"

45. Defendant Carr's email warned Cory that "[t]here is a $50 per day fine for bring [sic] an animal on the property without my approval and eviction of the tenant."

46. Cory submitted that documentation to Defendant Carr via email approximately two hours later.

47. Defendant Carr did not respond to Cory's April 14, 2017 email.

48. On or about April 19, 2017, Defendant Carr called April to tell her that Defendant Carr saw a dog in Cory and April's car at Central Park.

49. Defendant Carr told April that someone had reported that Marzipan was alone in the car and that person was concerned.

50. Defendant Carr also told April that dogs were not allowed at Central Park.

51. April reminded Defendant Carr that she had applied for a reasonable accommodation to keep Marzipan, and that she had been expecting an answer from Defendant Carr that day.

52. On or about April 19, 2017, Defendant Carr sent Cory an email stating, "Your ESA is approved. You may bring your dog on property…. Please keep the rules, the violation of them will lead to immediate eviction. This is your only notice."

### *Defendant Carr Forces Marzipan Out of Central Park*

53. On or about April 26, 2017, Defendant Carr called Cory and April to tell them that Marzipan would have to leave the property because she was barking.

54. Defendant Carr did not disclose how he came to learn that information.

55. On or about the same day, Defendant Carr sent Cory an email that stated if another complaint was received, Defendant Carr would have to take action.

56. Cory and April interpreted the phone call and the email as a threat to evict them if they kept Marzipan.

57. On or about April 27, 2017, Cory and April told Defendant Carr that they would remove Marzipan from Central Park.

58. In May of 2017, Cory and April drove to Pinehurst, Idaho, over four hundred miles away, to leave Marzipan with Cory's parents.

59. April's anxiety worsened immediately after Marzipan was removed from Central Park and she suffered physical symptoms related to her emotional suffering.

60. Cory also suffered symptoms of emotional suffering as a result of the Defendants' conduct.

61. Defendants' conduct caused April's underlying disability to worsen.

62. Cory and April's lease with Central Park was due to expire on July 31, 2017.

63. Cory and April decided not to renew their lease at Central Park due to April's worsening emotional state in Marzipan's absence.

64. Cory and April decided against renewing their lease at Central Park because Marzipan could not live with April, as prescribed.

65. On or about July 5, 2017, Cory called Defendant Carr to ask if he could allow Marzipan to stay on the property until Cory and April moved.

66. Cory also asked if Defendant Carr could waive the rule against barking to allow Marzipan to return.

67. Defendant Carr denied both requests.

68. On or about July 7, 2017, April consented to allow Intermountain Fair Housing Council (IFHC") Tester 020196 to pose as April to send an email to Defendant Carr.

69. Tester 020196 sent an email to Carr on or about July 24, 2017, posing as April, reading, "I talked to Cory and he said that you won't waive the rules to allow Marzipan back on the property. I'm very unhappy with this. She would only be here for a little while until we move, and she's a very good dog. Are you sure you can't waive the no barking rule for her?"

70. Defendant Carr responded to this email on or about July 24, 2017 stating, "I'm sorry, I've met your dog and she is really nice, but I can't allow her to come on property and be a nuisance to other tenants."

71. Tester 020196, replied on or about July 26, 2017, asking, "Is there any way you can waive this? I have been doing the best I can without her here with me but I really need her here."

72. Defendant Carr responded to this email on or about July 26, 2017, again stating, "I'm sorry, I've met your dog and she is really nice, but I can't allow her to come on property and be a nuisance to other tenants."

73. Because of Defendant Carr's discriminatory conduct, Cory and April began moving out on July 29, 2017.

74. The sole reason for their move was Defendant Carr's refusal to allow Marzipan to live with April at Central Park.

75. Cory and April lived with April's sister from July 31, 2017, to August 16, 2017, when they found a new residence in Chubbuck, Idaho.

76. Cory and April filed a complaint before the Department of Housing and Urban Development on September 29, 2017, thereby tolling the statute of limitations for this action.

77. Plaintiffs withdrew their HUD complaint on July 27, 2018.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

### 42 U.S.C. §§ 3602 and 3604

*By Plaintiffs Against All Defendants*

78. The Plaintiffs reallege and herein incorporate by reference all allegations set forth in Paragraphs 1-77 above.

79. The Defendants have discriminated in the sale or rental of and otherwise made unavailable and denied, a dwelling on the basis of "handicap." 42 U.S.C. § 3604(f)(1).

80. The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap". 42 U.S.C. § 3604(f)(2).

81. The Defendants, personally or through others, have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford Cory and April's and other similarly situated individuals' equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

82. The Defendants made, printed, or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation, and/or discrimination based on "handicap." 42 U.S.C. § 3604(c).

83. On information and belief, Defendants, acting personally or through others, continue to engage in discriminatory housing practices.

84. The Defendants' conduct is willful and intentional and exhibits reckless or callous indifference for the rights of the victims.

85. Because April and Cory have been injured by Defendants' discriminatory housing practices, April and Cory are aggrieved persons. 42 U.S.C. § 3602(i).

## SECOND CLAIM FOR RELIEF

### INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

### 42 U.S.C. § 3617

*By Plaintiffs against All Defendants*

86. Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-85 above.

87. By requesting the presence of a support animal in their apartment to assist with April's disability, Cory and April engaged in a protected activity.

88. Through their actions and failures to act, the Defendants coerced, intimidated, threatened, and/or interfered with Cory and April's right to engage in that protected activity.

89. The Defendants' actions and failures to act caused Cory and April to pause in seeking their right to engage in a protected activity.

90. The Defendants' conduct was willful and intentional, and exhibited reckless or callous indifference for the rights of the victims.

## VI. DAMAGES AND BASES FOR RELIEF SOUGHT

91. The Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-90 above.

92. The Defendants' discriminatory and retaliatory conduct directly and substantially injured Cory and April by causing them to suffer loss of civil rights.

93. Accordingly, April and Cory are entitled to actual damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1), in an amount to be determined at trial, but not less than $35,000.00.

94. The Defendants' violations of the Fair Housing Act directly and substantially injured April by causing exaggeration of her pre-existing disability.

95. The Defendants' violations of the Fair Housing Act directly and substantially injured Cory and April by causing them to suffer lost housing opportunity, emotional distress with attendant physical symptoms, humiliation, embarrassment, and other damages.

96. Accordingly, April and Cory are entitled to non-economic damages in an amount to be determined at trial but not less than $135,000.00.

97. In doing the acts of which Plaintiffs complain herein, Defendants acted with reckless and/or callous disregard of Plaintiffs' federally protected Fair Housing rights.

98. Accordingly, Plaintiffs seek to recover punitive damages against each individual Defendant pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c)(1), in an amount to be determined at trial.

99. There now exists an actual controversy between the parties regarding Defendants' duties under federal and state laws.

100. Accordingly, Plaintiffs are entitled to declaratory relief under 42 U.S.C. § 3613(c)(1), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

101. Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern and the practice of discrimination and unlawful conduct described herein.

102. Plaintiffs have no adequate remedy at law. They are now suffering and will continue to suffer irreparable injury as a result of Defendants' acts of discrimination and unlawful conduct unless relief is provided by this Court.

103. Accordingly, Plaintiffs are entitled to injunctive relief under the Fair Housing Act, 42 U.S.C. § 3613(c)(1), and Rule 65 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that the Court enter judgment against the Defendants as follows:

1. Declaring that Defendants' actions violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

2. Enjoining Defendants to make all necessary modifications to their policies, practices, and procedures to comply with the Fair Housing Act 42 U.S.C. § 3601 *et seq.*, as well as its implementing regulations provided at 24 C.F.R. § 100 *et seq*;

3. Enjoining Defendants to undergo training on the requirements of the Fair Housing Act 42 U.S.C. § 3601 *et seq.*, as well as its implementing regulations provided at 24 C.F.R. § 100 *et seq*;

4. Enjoining all unlawful practices alleged herein and imposing affirmative injunctive relief requiring Defendants, their partners, agents, representatives, employees, assignees, and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities in compliance with the Fair Housing Act 42 U.S.C. § 3601 *et seq.*, as well as its implementing regulations provided at 24 C.F.R. § 100 *et seq*;

5. Awarding Plaintiffs compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1), in an amount to be determined at trial but not less than $35,000;

6. Awarding Plaintiffs non-economic damages in an amount to be determined at trial but not less than $135,000;

7. Awarding actual and punitive damages to Plaintiffs in amounts to be proven at trial;

8. Awarding reasonable attorneys' fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 3613; and

9. Awarding such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues properly tried by a jury in the above-entitled matter.

DATED this 15th day of February 2019.

        ERTZ JOHNSON, LLP

        **/s/ Brian A. Ertz**
        Brian A. Ertz
        *Attorneys for Plaintiffs*